Thornton and Tereka O'Sullivage, Curriculum and Biologists, on behalf of cross-appellate Mal Appellate and V. Chernetsky. I'd like to reserve five minutes if I could. May it please the Court, this case was filed in 2006. For more than 11 years now, my client has been denied the right to practice his religion according to his pleas. For more than 11 years, the State of Nevada, it's the NDOC, the Department of Corrections, that is entitled to be the judge of what religion is legitimate enough to be recognized by that department. Moreover, it's the NDOC that is entitled to be the judge of what, within that religion, is a legitimate religious exorcism. Second, the State argues, that it should be granted far-ranging deference, that is, prison officials should be decided, should be able to subordinate religious practice to generalized needs to maintain order and security. These arguments fail first. Well, can I ask, which of the many issues that are still on the table are you trying to address right now? The religious oils, Your Honor. So, with respect to religious oils, the NDOC's policy and the policy that remains today violates the LUPA. It is a no-exceptions policy. And the State... Because there are so many moving parts, then you can help. It's shared-oriented businesses that claim that they are safe is now moved and you're saying it's not. Well, we've suggested in their recent motion for voluntary dismissal under Rule 22 that it may be that the regulation has changed, very much in the same way the regulation has changed on these other claims that you want to say are permanent. That's right. There's a slight difference, of course, because with the sweat lodge claim that the State was originally appealing, they lost, of course, and I'm sorry about that. Right. And with the religious oils case, we were the cross of no. So, with respect to religious oils, it's two sides of the same coin with the sweat lodge practice. And it's the same. The sweat lodge thing completely, if not is completely off the table. You won on that. You have a judgment in your favor. They've thrown in a towel of congratulations. So, your client's got to get relief in some form or fashion on that claim, whether you have to go back to the district court to enforce the order or not. But I'm trying to figure out, why are you resisting mootness as to this particular claim? I know I'm denying it, but you're not. Or maybe I've been there in the first, but you're taking it into inconsistent positions with respect to it. Okay. So, the mootness question is different from the religious oils altogether. Originally, my broad claims with respect to the State's denial of certain herbs, incenses, candles, and summary judgment in the district court. The district court granted summary judgment in favor of the State on that. However, in that case, my client did not actually challenge those practices because by the time summary judgment came around, the policy had already changed. So, my client had, before the court, not attempted to make his case as to why that previous policy was illegal under HULUPA. The difference here is, my client continues to be aggrieved by the religious oils policy. Sure. So, the religious oils policy, as it was amended approximately a week ago, now permits religious oils to be used. However, on the ground, there's been no indication that my client will be able to use the oils he needs. I'm trying to pin down exactly what's still at issue. Is there a concern about the type of oil before it was specified as baby oil? I understood the objection to that. Now it's non-flammable, non-toxic converting oil. Is that a problem? It is, Your Honor, and I'll tell you why. First of all, non-flammable, and there's no evidence before the court on this, but as best I can understand, nearly every, if not every, oil is flammable to some extent. Now, in terms of what the temperature is required to make a particular oil combustible, those change. I think they call it a flashpoint. But what it seems to do is provide an out for the state to say that the oils that my client needs, in fact, requires for his religious practice, are unacceptable. By the same token, there's a caveat under the new rules that say any scented oils must be pre-approved by what's called the religious review team. Now, the religious review team is a panel of Nevada administrators, and it only meets quarterly. So at a minimum, it's going to require pre-approval, thus a potentially three-month delay, before my client can get approval for his scented oils. Also, can I ask you this? It seems to me that a claim that's originally framed and ruled upon by the district court is really not proper performance. That old regime that existed, which was baby oil only, and we're here to tell you that that's good enough for your religion, that's not a claim. It sounds to me like you're making an argument as to a brand-new claim that would have to be re-litigated in the district court. I'm not sure that's right, Your Honor, because this is a facial challenge to the regulations. This claim, this case, was brought because my client was being denied the right to use the oils. He wasn't saying that his policy, as written, violated the HOOPA. He was saying, I am actually being denied the right to use these oils. You know what I'm saying? The arguments you just made about how this regulation might or might not be interpreted, we have no idea. You don't, I don't even know if the folks in the state do. So we're not in a position to be sort of ruling on the legality of the application of this new regulation, because it hasn't even occurred yet. I remember the merits of the claim that you prosecuted is just there was, it was basically a, I don't know, and we're sorry, that's the only kind of oil we permit. So I guess we can look at that and say, well, I mean, why would we even? You just talked about that that was legitimate or not, but it's no longer in existence. Well, Your Honor, for one thing, it was changed a week ago after this case even came in, for 11 years, and a week before oral argument. It has all the addition of a move to avoid adjudication of the claim. I suppose we agree with you, and we still puzzle as to what you want us to do now. It seems to me the most we can do is remand the case to the district court on that issue, which is really what you were asking for before anyway, but there's really not anything we can articulate that says this new policy passes must or not, because we don't have any evidence about the new policy. Is there anything you want other than a remand or an opportunity to play out that issue to the district court? Well, I don't think remand is the only possibility. I think that this case should reverse with instructions to grant summary judgment on our claims below, because I think that's the claim that the policy isn't there anymore. So you may be right. Maybe they changed the policy to snatch something from the jaws of defeat, but I don't think we have a live issue about that anymore. Well, again, I don't agree, because it was not a facial challenge. It was a challenge to the way my client's requests have been treated. So the court could easily reverse and say that is no longer acceptable. Let's certainly provide guidance to both the court below and the NBOC as to what RELOOPER requires with respect to its policies, but at a minimum, yes, we request a remand so that the court, the district court, could decide whether the case is moved. We'd argue that it's not, based on our understanding of the new policies, but at a minimum, that's what we'd like the district court to do with respect to the North Indian oil spill. Okay, so just formally, is there other aspects of the claims that you cross-review that you say were moved even before the district court ruled? You know what I'm talking about. Yes, the herbs and the insects and everything else like that. Exactly. So help me on this. I thought that, in terms of the timing, we had the district court, I've actually forgotten how to get a point on the dates, but we had a district court ruling in March, let's say, but the effective date of these new regulations that you say, Randolph, this means that it wasn't until September of that same year. So at the time the district court ruled, my understanding is that the policies that you were originally complaining of, yes, maybe they had been, you know, they were going to be changed as of September, but they were still in place. So why would the district court not have been permitted to go ahead and pull them here? Yeah, and Your Honor, to the best of my recollection of the record, that's not true. I think that Mr. Charnett, he said that these claims were now moved in his opposition to the state's motion for summary judgment, and that's at 146 in the district court, and there wasn't much wrong factually about the date sequence of that case. Well, obviously the policy had already changed by the time Mr. Charnett, he filed his opposition to the motion for summary judgment, and for that reason he did not provide the court with support as to why the prior policy was illegal. But just tell me, am I right in getting the dates, that I can recite the dates correctly, but at the time the district court ruled in March, the policy was still in effect, but the effective date of the changes was not until September of that same year. That's not my recollection of that time frame, Your Honor. Okay, but if that's true, then you're moving this argument in the wrong direction because the regulation at the time the district court ruled would still have been in place and there would have been a lack of controversy at least for those six months until the effective date took effect. Well, I think there's some support for the idea that when a claimant releases his claim to relief, when he informs the court that he's no longer aggrieved by the policy, whether the policy had been officially enacted or not, there's no longer a live case of controversy, so it should have been moved in rather than decided in the merits. I disagree, or at least my recollection of the timing is different than Your Honor's, but even if that were the case, I think that I know that Mr. Jankowski made clear to the district court that he was no longer aggrieved and that he was no longer challenged in the policy. Just a reminder, I think at the start you said you wanted to hold five minutes for a rebuttal. We're now down to much less. 335, Your Honor. Was this starting from 15 minutes or just the full time? Okay. If Your Honor has no further immediate questions, I'd like to reserve the remainder of my time. Thank you. Thank you. I'm faithfully supporting George Smith on behalf of the state of Nevada. First, I'll address why the Inozi oil claim is approved in light of the regulatory revisions, and I'll address the other three live issues that remain after the state's voluntary dismissal. Those three issues are the work preservation days, the denial of the motion for relief to amend, and the dismissal of some things on the merits rather than on the moving grounds. With respect to the Inozi oils, that claim is approved now in light of the regulatory revisions, as Your Honor has pointed out. Does he have the oils he wants yet? It's unclear in this new policy, as Your Honor pointed out. But does he have, the answer to that question is no. He is not satisfied with the state of affairs in terms of what access he has to oils. I don't know if that's accurate, Your Honor. Below, Mr. Chessie didn't offer any alternative baby oils. His stance has always been, I just can't be limited to baby oil. So, in the briefing below, he never suggested an at least reciprocal alternative. I'm going to try to make an easy question here. As far as you know, has Mr. Chessie said, okay, I'm satisfied, I'm getting what I want? No, he has not. Then how can we say the case is moved? Because of that new policy that no longer limits him to baby oil. But we don't know. I mean, I look at the policy. On some level, by definition, every oil is going to be flammable. You can stick it in an incinerator. So, it's actually how that gets interpreted, how limited it is, whether he's satisfied. I can't answer that question. And he brought a challenge, not as a facial challenge, as such. He's saying, I'm not getting what I need to practice my religion. And we don't know, as we see here, whether he's getting what he needs to practice his religion. But we don't know whether, under the new policy, he's going to be unable to get what he needs. Well, why does that mean his claim loses, or his academicism is moved? He's brought his lawsuit. Maybe that means we go back to the district court and have the district court sort out whether he still has a grievance. But if you don't know he has a grievance or not, how can we say the case is moved? The basis of his claim was that his religious liberty was being improperly hurt by being limited to baby oil.  I think I've disproved your honor, respectfully, on that characterization of the claim. His claim was, this policy unduly limits me to baby oil. The Didactic Book of Shadows specifically says I cannot use baby oil. That limitation to baby oil is no longer in place under the new policy. So, the basis of his claim, that baby oil was against his religious beliefs, is no longer in place. So, I believe, with the absence of that, the case has become moved. And it's unclear whether or not, even if it's unclear whether or not he can still get the specific oil he wants. And whatever this specific oil is, it's not clear from the record. He never suggested that. So, whatever specific oil he wants. Well, you wouldn't have had reason to specify, because he was working with the policy that the state had in place. The state changes its policy. It's a new state of affairs, but I'm not sure it's so clear that, okay, he ought to be satisfied now. We won't have a problem with this case anymore. A removal requires an as-implied, case-by-case basis. The authority is that this particular inmate can be granted this particular accommodation. And if not, the denial of that accommodation is the least restrictive reason for compelling everyone's interest. Mr. Tansky never specifically said, this is the accommodation I want. His argument was simply, just not baby oil. So, it's not true to say that he, you know, he doesn't have to specify an accommodation. At the point, a ban is enough. Now, I think if the Holt v. Hobbs case, where there was a ban on the length of hair, the inmate there said, well, how about this less, this lower amount? The court didn't say, well, you aren't required to suggest, you know, what you actually wanted. The overall ban was enough. So, Mr. Tansky, there should be a factual determination whether under the new policy, Mr. Ternesky is able to have access to the oils he claims that he needs. But, it's like. I'm on that page, but we can't answer that question. That's correct. This court denied. So, at most, it remanded. But, I would say this claim is moot. I understand the long procedural history. The state's probably careful to suggest just saying, file a new lawsuit if and when you're denied. I understand that. So, at most, it remanded to the district court. It sounds like we've got an overlap here. In terms of, if we can't determine factually whether plaintiff is still agreeing, we should remand to the district court and check out the current state of affairs. That's something that might not be the first choice of either side. But, it sounds like both sides see a remand as being in the cards. Perhaps it could be an option. But, I do think this claim is what should be our focus on the baby oil policy. Part of it now. And, that could be dismissed. Counsel, Judge Gould. If I could have another second. Can you explain to me why the timing is such that the policies descended shortly before our argument? Sure, Your Honor. I understand the court may have concerns about the timing of this. But, as the court knows from the parties' joint status reports that have been filed, and the opposing counsel well knows, the parties have been trying for a long time to settle this case. That's why our argument was initially continued at one point. It was the department and the state's hope that there could be a global resolution, along with Mr. Chepetsky, which would lead to regulatory revisions. It all could be done sort of on a global basis. Unfortunately, that didn't happen. The regulations weren't issued in the middle of negotiations because, for a number of reasons during the course of settlement negotiations, but one of them being if you issue regulations and the settlement ends up taking a different form, you might need to reissue the regulations. So, the characterization of these changes is sort of a last-ditch attempt to pull the rug out from under oral argument here. It's not accurate. These changes just take a long time. The parties have been working to settle both in the district court and before this court. And, when you're working on regulations, they take a long time, especially in the prison context when you have to deal with security issues. So, that's the reason why the changes have taken so long to be implemented. Okay, thank you. With regard to the first of the three lifetimes that remain, the work prescription days, again, as I mentioned, this is a case-by-case inquiry. The statute says a position on that person. And here's the evidence that Mr. Chepetsky has ever asked for or was denied a work prescription day. And, finally, we have the actual documents that show that he did put in requests and was told, no, you guys don't believe in the Ken Quincey Republican religion. You all don't get them. Sorry. Those documents lead to another indivisible, Mr. Daniel Cook, who Mr. Chepetsky refers to as a co-religionist or a religionalist. But there's no actual documentation from Mr. Chepetsky himself. As stated in the Declaration of Chaplain Calderon, which is at 796th record, he states that Mr. Chepetsky's work days were Monday through Thursday, and the designated Wiccan celebration day was on Saturday. And according to Chaplain Calderon, Mr. Chepetsky never requested a day off work, Monday through Thursday, to celebrate one of the Wiccan holidays. Mr. Chepetsky responds, of course, well, the state only recognized certain holidays. There might be other holidays that fall on Monday through Thursday that we weren't able to celebrate. There's a process set out in the Religious Practice Manual in Sections 10 and 11, which allow Mr. Chepetsky to type or request the recognition of an additional holiday or additional day off of work. And Chaplain Calderon's declaration backs that up as well, saying that if there was a day where Mr. Chepetsky was scheduled to work, but we wanted to celebrate, he could have gone through a process to ask for that day off. And there's no evidence that he ever did so. So, again, this is a facial, I'm sorry, this is an as-it-was. I don't know if you're right with regard to the plaintiff, but there is the evidence with regard to Mr. Cook. Is there an explanation as to why the application was rejected? No, not in this record. I don't know why Mr. Cook was or wasn't denied. But, again, that's a case-by-case, specific, inmate-specific inquiry. So perhaps there were Justice Capelli's day interests that were least restrictive to justify denying Mr. Cook if he was, in fact, denied, that don't apply to Mr. Chepetsky. So I don't know the circumstances where Mr. Cook was or wasn't, but that doesn't say whether Mr. Chernesky's religious liberties were actually substantially burdened unjustifiably. Counsel, is there an exhaustion requirement? And on this issue of the days off, has the claim been exhausted from the presences? It doesn't appear so. If you look at Chaplain Calderon's declaration, where Mr. Chernesky never requested it was denied a day off, there's no backup documentation that Mr. Chernesky then filed in prevention based upon being denied. So I do think there are exhaustion issues there as well, Your Honor. Now let's turn to the style of Mr. Chernesky's motion for leave to amend. On his first appeal, this court rightfully recognized that Mr. Chernesky had abandoned his constitutional claims. The district court granted summary judgment on his 1983 claims, and Mr. Chernesky never appealed those. Nonetheless, this court instructed the district court to consider whether leave to amend should have been granted. And the court cited U.S. v. Webb with a parenthetical saying that a party is allowed to amend once as a matter of course before a party files a response of pleading. Then on remand, there's a two-year period before the defendant's answer, during which Mr. Chernesky didn't file an amended complaint and didn't file a motion for leave to amend. Once the defendants filed their answer, Mr. Chernesky didn't file an amended pleading within the 15 days or 21 days followed by Rule 15. And, in fact, Mr. Chernesky actually missed the first day set in the scheduling order for motions for leave to amend. And the magistrate said February 25, 2013, as the date, as the deadline to file motions for leave to amend. It wasn't until March, a couple days after that deadline, when Mr. Chernesky asked for that deadline to be extended. The basis for that request set out in supplemental excerpts of Record 26 and 27 indicated to the magistrate, I need to amend my sweat lodge claim. That's the only claim going to trial now. On the basis of that representation, the magistrate judge extended the deadline for motions for leave to amend. But when Mr. Chernesky actually got around to filing his amended complaint, he added no allegations, so it didn't change his sweat lodge allegations at all. It renamed the individual defendants who had been granted qualified immunity back in 2007 and then re-planned a personnel retaliation claim and a claim for an establishment clause claim. The magistrate judge then, given the two-year gap between when the case had been remanded  the magistrate determined that delaying the two-year delay was unduly burdensome and prejudicial to the defendants. It occurred on the eve of the dispositive motion deadline and only a couple of months before the November trial setting at that point. The district court correctly relied upon this court's decision and Amerisource 3 Bergeron where this court said that just because a motion for leave to amend is filed within a time set by the scheduling order, that doesn't de facto render it timely that the court's lease considered the Rule 15 factors and whether there's been an undue delay. In the Amerisource case, that was a 15-month delay. Here, it was a 24-month delay. And in other cases, this court has appealed files of leave to amend with an 8-month delay. So it was unduly prejudicial and unduly timely, especially for the individual defendants who now at this point were facing the prospect of money, misery, and damages only months before trial. So the district court didn't abuse its discretion by denying the leave to amend. So now we're going to touch upon what's happened with the OITOL issue we were talking about earlier. I'll briefly assume Mr. Chernesky's argument is that some claims should have been dismissed as moot rather than on the merits. And I'm a little bit confused by the plea regarding the ceremonial fires. In the briefing below, it was actually the defendant's court that the ceremonial fires claim was moot. And Mr. Chernesky, in his opposition to the defendant's motion for leave, he agreed to D-5 of the record. He argued that that claim was not moot. I got confused through that section. So maybe I'll have a less than perfect grip. But my sense was his concern wound up being, if there turns out to be a problem here, I don't want to be precluded from coming back to court. So if it's made clear that nothing here is preclusive to that ability, is there still an issue left with regard to the fires? No, I'm sorry, Your Honor. If a ban were to be reinstated or there were some later act now that substantially burdens his exercise of religion on books, for example, or ceremonial fires or verbs of incest, those would be new, discrete claims that would arise later on. I don't see how the dismissal earlier would preclude any claims based upon a new ban that would be reinstated. So you're not looking for us to say anything that would be preclusive. And if their concern is that just they don't want to hear something that's preclusive, and that satisfies it, it may be those issues like most of the others who have been overtaken by the bans, the revision of the prison regulations. I would agree with you, Your Honor, on that front. Let's defer to the other questions. Yeah, let's do it. So the ceremonial fires claim you were saying, that claim was new at the time. It's a provable claim. And I actually believe the magistrate dismissed it as new. And if you look at supplemental excerpts of Record 44, I believe the magistrate actually dismissed the ceremonial fires claim as moved. It's less clear with the verbs of incest. And my memory of the record is similar to yours, Your Honor. But there was some timing, so that you could see when motions were filed and certain regulations being reviewed by the Attorney General's Office that weren't in place yet at the time of the motions being filed, but I don't have a specific recollection of in relation to when those regulations went into effect after the briefing and then when the court ruled. But my memory, I do have a memory that's very similar to yours, but I don't have the exact dates nailed down. But the ceremonial fires claim was dismissed as moved by the magistrate judge. Okay, we can verify that. But as to the other claims, though, my recollection, contrary to minority speech, that the District Court did reach the emergency rule to cast the claim upon all of those other claims. And he has contention that that should never have happened and that rule, the rule should be weakened because if all of those claims were moved, or that the plaintiff himself had withdrawn those claims from the court's consideration. So what's your response to that? If you look at Mr. Cassidy's briefing below, and I recognize he was pro se, he didn't abandon his defense of any of those claims. Those claims were litigated. Those claims were litigated. As I mentioned, he did claim that some of those issues were not exactly what his argument was. So I believe the District Court, at least as far as the other issues, didn't rule on the merits of those claims. The only claim according to the magistrate's decision that they ruled on as moved was the ceremonial fires claim. But I do believe the magistrate did rule on the merits of the other claims. Your position is what? That those claims were moved or they weren't? They were not moved. The ones that the magistrate did rule on the merits, the magistrate properly granted deliberate judgment. That's why. Why were they not moved? Because my memories, as I tried to explain, my memory of yours is similar to yours. I don't know if that's an issue. Where are the fires? For the claims except for the fires. Yeah, other than the fires. Other than the books, slaves, herbs, and incense. I believe those were ruled on the merits properly given the timing. Okay. Thank you. Thank you. Thank you very much. With respect to Judge Gould's question about exhaustion, I think that's a salient point because it's an affirmative defense, a lack of exhaustion under the PLRA, and the state did not raise that defense. So that is what I think is substantial evidence that the state understood that there was a denial with respect to work prescription dates. And the record supports the idea that the state of Nevada, and that's mainly why we're here, the state of Nevada and the NDOC operated under a no-acceptance policy. So what the state is arguing is the record supports the proposition that your client asked for time off that he didn't get. I will cease your honor that there is no evidence in the record that my client asked for days off and didn't get it. However, there's sufficient evidence in the record that that was the policy. The written policy was this isn't a facial challenge, this is a specific challenge, and we don't have any evidence that your client was denied. I'm not sure what we're supposed to be. Well, actually, in the complaint, which is SCOR 1012, my client, if you read it favorably, and he wasn't acting pro se at that time, he does appear to make a facial challenge with respect to the work prescription policy. With respect to the essential oils, I would disagree with the state's contention. He just said baby oil is no good at SCOR 1013. He says that the state has prohibited religious and or spiritual use of anointing oils. So he made a very specific claim that he wasn't being allowed to use the oils that he needed, and, in fact, he said the same thing in his motion for summary judgment. So it wasn't just about baby oil, and your honor is absolutely correct that we can't know at this point whether the amended policy will allow him to get what he's been seeking for the past 14 years. So what would you have told me? I mean, we may have a meeting ground here. Were these issues that need to be remanded to the district court in order to determine how the new regulations have impacted upon your client's claim? Well, again, we would request that summary judgment be granted in our favor. And then, just one, as to the anointing oils. Because the state really made no effort to prove that it was compelling a government interest or that it was the least intrusive means, and, in fact, it's clear that it wasn't because of the new policy that's been instituted that the state asked the court to take judicial notice of. So it seems clear that my client should have been granted summary judgment on the anointing oils. And that's what we would ask the court to do. Now, how about the other issues that are left? I mean, are there other issues left, or do they all fall into the box of goodness? Well, again, the board prescription claims have not been affected at all. There have been no changes to the policy on that front, the fires, the books, and the herbs. No, but those are not active claims. And our only request is that the order on the merits with respect to those be communicated. And for the very reason that Your Honor identifies, we don't want a later change in policy, maybe under a new director of the NPOC to come ahead and change things. And now we've got a preclusive order from the District of Nevada saying we're not entitled to those things. With that, it looks like I'm up for time. Thank you, Your Honor. Thank you very much. I think it's just a very good call to submit it. And we are adjourned for the day. That's fine. Thank you. Thank you.
judges: Gould, Clifton, Watford